UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN KONEFE,

     Plaintiff,

                                  Civil Case No. 22-11004

v.                                Honorable Linda V. Parker

AUTOZONERS, LLC.,[1]

     Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF NO. 9)

This is a diversity action arising out of claims of employment discrimination, harassment, and retaliation. Brian Konefe ("Konefe") initiated this lawsuit on May 10, 2022. In an Amended Complaint filed on June 13, 2022, against AutoZoners, LLC ("AutoZone"), Konefe alleges the following: racial discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, ("Title VII") and the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2201 *et seq.*, ("ELCRA") (Count 1); retaliation in violation of Title VII and the ELCRA (Count II); and discrimination

---

[1] Defendant was improperly named in Plaintiff's Complaint and Amended Complaint as AutoZone, Inc. However, the correct entity is AutoZoners, LLC.

and retaliation under the Michigan Persons with Disabilities Civil Rights Act,

Mich. Comp Laws. § 37.1101 *et seq.*, ("PWDCRA") (Count III).  (ECF No. 8.)

The matter is presently before the Court on "Defendant's Partial Motion to

Dismiss Plaintiff's Amended Complaint" (ECF No. 9).  The motion is fully

briefed.  (ECF Nos. 11, 12.)  Finding the facts and legal arguments sufficiently

presented by the parties, the Court is dispensing with oral argument with respect to

the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).

For the reasons that follow, the Court is granting AutoZone's motion and

dismissing Count III and the racial harassment claim in Count I of the Amended

Complaint.  Count II and the racial discrimination claim in Count I will proceed for

further litigation.

## I.  Factual Background

Konefe is a Caucasian male.  In or around April 2021, he was hired by

AutoZone in its Saginaw, Michigan location.  Konefe later worked as a Store

Manager at AutoZone's Rochester Hills, Michigan location ("Rochester store").  In

or around April 2021, an African-American employee allegedly committed a theft

at the store Konefe managed.  Konefe notified the district manager, who is

African-American, that because of the theft, the store needed new locks, keys, and

security codes.  Konefe alleges that the district manager became "overly

defensive" and did not acknowledge the risk of potential theft "because the original

2

theft was committed by an African American employee of [AutoZone]."  (ECF No. 8 at Pg ID 70, ¶ 15.)

At an undisclosed later date, Konefe and the district manager had a disagreement regarding whether the Rochester store needed to change the locks, keys, and security codes, as well as the district manager's alleged refusal to acknowledge the potential risk of theft "because the original theft was committed by an African American."  (*Id.*  ¶ 15.)  Konefe alleges that since the disagreement occurred, he has experienced harassment and adverse employment actions because of his race, including being demoted from his title of "Store Manager" to "Manager."  Konefe also maintains that discrimination occurred when the district manager changed the locks, keys, and security codes without notifying him, causing Konefe to be locked out of the Rochester store.  From or around July 2020 through December 2020, Konefe participated in a store manager training program. Upon completion of the program,  Konefe alleges that the district manager refused to consider him for a store manager position "due to [Konefe's'] race and hired an African-American friend instead."  (*Id.* at Pg ID 71, ¶ 22.)

Konefe filed a report with AutoZone's Human Resources Department but alleges that HR "refused/failed" to investigate his complaint regarding his treatment by the district manager.  Konefe also alleges that during the time he was supervised by the district manager, Konefe was treated differently than his

African-American coworkers, which caused him "extreme stress." (*Id.* ¶ 22.) Konefe subsequently took medical leave for severe hypertension due to stress.

On or about May 7, 2021, the district manager terminated Konefe. On December 6, 2021, Konefe filed an EEOC complaint and received a "Right to Sue" letter on February 14, 2021.

## II. Standard of Review

AutoZone seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Majestic Bldg. Maint., Inc. v. Huntington*

*Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at

678.)  Moreover, the plausibility standard "does not impose a probability

requirement at the pleading stage; it simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of illegal [conduct]."

*Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court

must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*,

551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions,

however.  *Iqbal*, 556 U.S. at 668.

Ordinarily, the court may not consider matters outside the pleadings when

deciding a Rule 12(b)(6) motion to dismiss.  *Weiner v. Klais & Co., Inc.*, 108 F.3d

86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.

1989)).  A court that considers such matters must first convert the motion to

dismiss to one for summary judgment.  *See* Fed. R. Civ. P 12(d).  However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the

[c]omplaint and any exhibits attached thereto, public records, items appearing in

the record of the case and exhibits attached to [the] defendant's motion to dismiss,

so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.   Applicable Law & Analysis

In the motion, AutoZone seeks to dismiss a portion of Count I and Count III pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, AutoZone maintains that Konefe's racial harassment claim (Count I) should be dismissed for the following reasons: (1) "[Konefe] failed to state a claim because he did not allege that he was subjected to racial comments or conduct" and (2) "[Konefe] failed to state objectively severe or pervasive conduct that could support a cognizable hostile work environment claim."  (ECF No. 9 at Pg ID 90.)  Next, AutoZone maintains that Konefe's PWDCRA claim should be dismissed for the following reasons: (1) "[Konefe] failed to state a 'regarded as' or 'perceived' as disability claim" and (2) "[Konefe] failed to identify any substantial impairment on major life activity to support a disability discrimination claim."  (*Id.*)

### Racial Discrimination and Harassment (Count I)

As an initial matter, Count I of the Amended Complaint contains two separate claims—racial discrimination and harassment due to a hostile work environment based on race—despite being labeled as a single count.  Notably, AutoZone states in its reply brief that it is not seeking to dismiss Konefe's racial

6

discrimination claim, only the racial harassment claim.  (ECF No. 12 at Pg ID

150.)  As such, the Court will separate the claims and only address the racial

harassment claim in this opinion.

Generally, the Sixth Circuit analyzes discrimination claims brought under

the ELRCA under the same standards as discrimination under Title VII.  *Jackson v.*

*Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).  "A plaintiff may advance a

claim of discrimination by way of a racially hostile work environment under Title

VII."  *Id.*  Title VII makes it unlawful to "discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin[.]"  42 U.S.C. 2000e-2(a)(1).  To allege a claim for

a hostile work environment based on race, a plaintiff must establish five elements:

1) he is a member of a protected class; 2) he was subjected to unwelcome racial

harassment; 3) the harassment was based on race; 4) the harassment created a

hostile work environment; and 5) the existence of employer liability.  *See Hafford*

*v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Bowie v. Oakland Cmty. Coll.*, No.

21-10098, 2022 WL 4541627, at *4 (E.D. Mich. Sept. 28, 2022).

"[W]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In order for conduct to rise to the level of being "severe or pervasive," it must create a subjective hostile work environment and an objective hostile work environment, which is one that "a reasonable person would find hostile or abusive." *Harris*, 510 U.S. at 21; *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009).  Further, courts must assess whether the alleged harassment is severe or pervasive by considering the totality of the circumstances.  *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (citing *Harris*, 510 U.S. at 23); *see also Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

In order to survive the motion to dismiss, Konefe must allege sufficient facts in his Amended Complaint that would lead the Court to draw a reasonable inference that the alleged harassment was based on his race.  *See Iqbal*, 556 U.S. at 678.  However, Konefe has alleged no such facts.  In support of his racial harassment claim, Konefe states the following:

> [AutoZone] discriminated against [Konefe] and/or created an offensive and hostile work environment against [Konefe] as a direct result of [Konefe's] race by reason of the following acts and/or omissions:

8

a. Violating the laws against discrimination by engaging in racial discrimination in the workplace;

b. Imposing discipline based on race;

c. Taking adverse employment action against [Konefe] based upon his race;

d. Preventing [Konefe] from having full and fair opportunities to advance in his position based upon his race; and

e. Creating a hostile work environment for [Konefe] by discriminating against him, harassing him, and retaliating against him due to his race

f. Refusing to promote [Konefe] due to his race.

(Amend. Compl. ECF No. 8 at Pg ID 73-74, ¶41.)  First, nothing in Konefe's Amended Complaint demonstrates that he was demoted, terminated or not promoted because of his race.   Konefe's arguments based on the present facts are speculative and conclusory at best.  Moreover, asserting that racial harassment occurred merely because the district manager "is an African-American male" and the district manager refused to change keys, locks and security codes "because the original theft was committed by an African American," borders the line of being frivolous.

9

Another factor required to allege a hostile work environment based on race is to sufficiently plead facts as to the existence of a hostile work environment in general.  *See Hafford*, 183 F.3d at 512.  The Sixth Circuit requires plaintiffs to meet a high bar to establish a hostile work environment claim.  *See Khalaf v. Ford Motor Co*., 973 F.3d 469, 482 (6th Cir. 2020) (quoting *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017)) ("[T]his court has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory.")  Again, Konefe does not meet this burden.  In support of Konefe's claims, he asserts that he was "subjected to repeated and continuous discriminatory treatment, up to and including adverse employment action, based upon his race by [the district manager], to the point where [Konefe's] status as an employee was detrimentally affected by [AutoZone] and [Konefe] was subjected to work in a hostile work environment."  (ECF No. 8 at Pg ID 73, ¶ 39.)  The Sixth Circuit is clear in that "[a]n adverse employment action has been defined as a "materially adverse change in the terms and conditions of a plaintiff's employment."  *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 795 (6th Cir. 2004) (*en banc*).  Specifically, a "suspension, like a termination, denial of transfer, or refusal to hire, constitutes a separate actionable 'unlawful employment practice,'" but "cannot properly be characterized as part of a continuing hostile work environment" due to being considered discrete acts.  *See Sasse v. U.S. Dep't*

10

*of Lab.*, 409 F.3d 773, 783 (6th Cir. 2005); *see also Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (noting that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'").

Further, Konefe alleges "ongoing and continuing unwelcome conduct and communication" that created an intimidating, hostile, or offensive work environment," but failed to allege the any details of these communications.  (ECF No. 8 at Pg ID 72, ¶34.)  The only other communication and conduct alleged in the Amended Complaint that exhibits any relation to a claim of harassment, or a potentially severe and pervasive hostile work environment, involves the "argument" about changing the locks, keys, and security codes, and Konefe being locked out of the Rochester store.  (ECF No. 8 at Pg ID 70, ¶¶ 17-18.)  However, the Supreme Court and this Circuit outlined a list of factors to determine, under the totality of the circumstances, whether a hostile work environment exists: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance*;* and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.; *see Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008) (concluding that a determination that offensive utterances rise to the level of a hostile work

11

environment "would risk changing Title VII into a 'code of workplace civility.'")
Here, Konefe has not provided sufficient facts for anything beyond potential
offensive utterances during a single argument over the Rochester store.  The
Amended Complaint fails to allege sufficient facts to demonstrate the existence of
a severe or pervasive work environment, or that the alleged harassment was based
on Konefe's race.

### Discrimination and Retaliation under the PWDCRA  (Count III)

In the Amended Complaint, Konefe maintains that he was terminated due to
his disability and taking medical leave.  To support his assertion, Konefe states that
he "suffered from severe hypertension, a disability under the PWDCRA, which
[AutoZone] regarded as a disability and which substantially interferes with major
life activities."  (ECF No. 8 at Pg ID 77, ¶ 55.)  As mentioned above, AutoZone
seeks to dismiss Konefe's discrimination claim under the PWDCRA.  First,
AutoZone maintains that "[Konefe] failed to state a 'regarded as' or 'perceived' as
disability claim."  (ECF No. 9 at Pg ID 90.)  A plaintiff may fall under the
definition of someone who is "regarded as having a disability *if an employer
ascribes* to that individual an inability to perform the functions of a job because of
a medical condition when, in fact, the individual is perfectly able to meet the job's
duties."  *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106 (6th Cir.
2008) (emphasis added).  The key here is whether Konefe alleged sufficient facts

that show AutoZone regarded him as having a disability.  However, Konefe did not

allege any facts that would support this assertion.

Next, AutoZone seeks dismissal of Count III maintaining that "[Konefe]

failed to identify any substantial impairment on [sic] major life activity to support a

disability discrimination claim."  (ECF No. 9 at Pg ID 90.)  In response, Konefe

maintains that he is not required to make a *prima facie* case for his disability

discrimination claim but is only required to "give the defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests."  (ECF No. 11 at Pg ID

145-46 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).)  Konefe is

correct that his Amended Complaint is not required to make a *prima facie* case for

his disability claim.  However, at the motion to dismiss stage, Konefe is required to

give fair notice, which means that he must "state[] a claim for relief that is

plausible, when measured against the elements of an ADA [or PWDCRA] claim."

*Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020).

Discrimination claims under both the PWDCRA and the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C.§ 12112(a), "substantially mirror" one

another, *see Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012), and as such,

"claims under both statutes are generally analyzed identically."  *Steward v. New

Chrysler,* 415 F. App'x 632, 641 (6th Cir. 2011).  "To establish a *prima facie* case

of discrimination under the PWDCRA, a plaintiff must establish: (1) that he is

disabled as defined by the PWDCRA; (2) that the disability is unrelated to his

ability to perform the duties of his particular job; and (3) that he was discriminated

against in one of the ways described in the statute." *Cummings v. Dean Transp.,*

*Inc.*, 9 F. Supp. 3d 795, 804 (E.D. Mich. 2014) (citing *Peden v. City of Detroit*, 680

N.W.2d 857 (Mich. 2004)).  The PWDCRA defines a 'disability,' in relevant part,

as:

> (i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
>
> > (A) For purposes of article 2, substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

Mich. Comp. Laws § 37.1103(d)(i)(A).  'Major life activities' have been defined as

"functions such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning and working." *Hawkins v. Genesys Health*

*Sys.*, 704 F. Supp. 2d 688, 701 (E.D. Mich. 2010) (citing "*Chiles v. Mach. Shop,*

*Inc.*, 606 N.W.2d 398, 407 (Mich. 1999)).

Courts use a three-prong test to determine if someone has a disability under

the ADA: "First, the Court considers whether a condition is an impairment;

second, it identifies the life activity that the plaintiff relies upon and determines

whether it constitutes a major life activity; and third, the Court asks whether the impairment substantially limits the major life activity." *Williams v. Stark Cnty. Bd. of Cnty. Comm'rs.*, 7 F. App'x 441, 445 (6th Cir. 2001) (citing *Bragdon v. Abbott*, 524 U.S. 624, 630–31 (1998)).  Thus, "[t]o qualify as a disability, in other words, a condition must substantially limit a major life activity, not merely have the potential to cause conditions that do." *Darby*, 964 F.3d at 446.

Here, Konefe asserts that he has severe hypertension, which may be considered an impairment under the ADA.  *See Williams*, 7 F. App'x at 446. However, the Amended Complaint fails to identify a single life activity that is impaired due to hypertension as required by the PWDCRA and ADA.  *Id.*; *see, e.g.*, *Darby*, 964 F.3d at 446–47 (determining that a plaintiff must assert more than the alleged disability alone "[b]y the clear terms of the ADA . . . to survive a motion to dismiss.").  Because Konefe has not provided sufficient facts to satisfy the second prong of the disability analysis, the Court is unable to reach the third prong to determine the existence of a substantial limitation.  Thus, Konefe has failed to allege sufficient enough facts in his Amended Complaint for the Court to determine whether a disability exists under the PWDCRA.

## IV.  Conclusion

In short, the Court concludes that Konefe's Amended Complaint failed to allege sufficient facts for a reasonable determination that AutoZone created a

hostile work environment based on race.  Further, the Amended Complaint failed to allege the existence of a disability under the PWDCRA or the ADA, as required by his discrimination claim under Count III.  As such, Claim III and the racial harassment claim under Count I must be dismissed pursuant to Rule 12(b)(6).

Accordingly,

**IT IS ORDERED**, that AutoZone's partial motion to dismiss (ECF No. 9) is **GRANTED**, and Count III and the racial harassment claim under Count I are **DISMISSED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: February 9, 2023

16